IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RONALD T. WHITAKER, SR.,** : | CIVIL ACTION NO. 1:08-CV-0627 |
| **Co-Administrator of the Estate of** : | |
| **Ronald Taylor Whitaker, Jr.,** *et al.*, : | |
| : | |
| Plaintiffs : | (Judge Conner) |
| : | |
| v. : | |
| : | |
| **SPRINGETTSBURY** : | |
| **TOWNSHIP,** *et al.*, : | |
| : | |
| Defendants : | |

## **MEMORANDUM**

This is a civil rights action brought pursuant to 42 U.S.C. § 1983 against defendants Springettsbury Township, the Springettsbury Township Police Department ("Springettsbury Police Department"), police chief David Eshbach ("Eshbach"), and police officer Gary Utter ("Utter"). Plaintiffs seek to recover damages for the death of Ronald T. Whitaker, Jr. ("Whitaker"), who was fatally shot and killed by Utter on July 7, 2007. Presently before the court is a discovery dispute concerning the extent to which the Springettsbury Police Department may withhold certain internal memoranda that it asserts are privileged.[1] The court will briefly present the facts relevant to its decision.

---

[1] The court held a telephone conference on November 13, 2008, in which all parties were represented and the discovery issues addressed in this memoranda were discussed. Additionally, defendants submitted a letter brief to the court presenting relevant case law and arguments.

**I.     Statement of Facts**[2]

On July 7, 2007, Springettsbury police officer Gary Utter arrested Whitaker and took him into custody. (Doc. 1 ¶ 22.) When they arrived at the Springettsbury Police Department, Utter placed Whitaker in a holding cell. (Id. ¶ 24.) At some point thereafter, Utter entered the holding cell and an altercation ensued between Utter and Whitaker. (Id. ¶ 25.) During the struggle, Utter drew his firearm and fatally shot Whitaker. (Id. ¶ 29.) Subsequent to this incident, the Springettsbury Police Department appointed Scott E. Laird to conduct an internal investigation in the matter. Laird produced a memorandum ("Laird memorandum"), which described the facts that he gathered as well as his recommendations for departmental disciplinary action.

Defendants have refused to produce the Laird memorandum on grounds of executive privilege and the self-critical analysis privilege.[3] Defendants also withheld the following documents on the ground of the psychotherapist-patient privilege: any departmental records of post-incident counseling sessions involving Utter and a social worker or psychologist; records containing Utter's pre-hire

---

[2] The court will present the facts as alleged in the complaint, defendants' answer, and the oral representations made by the parties' counsel during the November 13, 2008 telephone conference. The characterization of the facts reflects neither the findings of the trier of fact nor the opinion of the court as to the reasonableness of the parties' allegations.

[3] Defendants also claimed that the Laird memorandum was shielded by the law enforcement privilege. During argument on November 13, 2008, counsel for the defendant conceded that this ground was inapplicable.

departmental psychological evaluations; and pre-incident, post-hire departmental psychological evaluations of Utter. Finally, defendants refused to produce records of past disciplinary action imposed upon Utter by the Springettsbury Police Department.[4] The court will address each category of documents separately.

## II. Discussion

### A. The Laird Memorandum

Defendants assert that the Laird memorandum is protected by both the executive privilege and the self-critical analysis privilege.[5] The executive privilege is "the government's privilege to prevent disclosure of certain information whose disclosure would be contrary to the public interest." Frankenhauser v. Rizzo, 59 F.R.D. 339, 342 (E.D. Pa. 1973). This privilege arises in many distinct contexts, but in civil rights cases where internal police records are sought, analysis of the government's executive privilege claim is guided by the ten factors explicated by Judge Becker's seminal opinion. See id. at 344.

The Frankenhauser factors require the court to consider

> (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their

---

[4] Defendants also have yet to produce departmental insurance information requested by plaintiffs. Counsel for defendants represented to the court that this information would be produced promptly.

[5] To the extent that the executive privilege must be invoked by the relevant governmental agency or department head, the court imputes such an invocation by virtue of defense counsel's representations during the November 13, 2008 telephone conference.

>    identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiff's case.

Id. at 344.[6]  Carefully balancing these factors on a case-by-case basis allows a court to weigh "the need for the[ ] discovery against the particular reasons advanced to support confidentiality." Crawford v. Dominic, 469 F. Supp. 260, 262 (E.D. Pa. 1979) (citing Swanner v. United States, 406 F.2d 716, 719 (5th Cir. 1969); Jabara v. Kelley, 75 F.R.D. 475 (E.D. Mich. 1977); Wood v. Breier, 54 F.R.D. 7, 13 (E.D. Wisc. 1972)); see also Mines v. City of Phila., No. 93-3052, 1994 WL 618490, at *1 (E.D. Pa. Nov. 7,

---

[6] During argument on November 13, 2008, plaintiffs' counsel claimed that the Frankenhauser test had been substantively modified, and cited this court to Startzell v. City of Phila., No. 05-5287, 2006 WL 2945226 (E.D. Pa. Oct. 13, 2006), and Crawford v. Dominic, 469 F. Supp. 260 (E.D. Pa. 1979). Neither of these cases abrogate or modify the Frankenhauser analysis. In fact, Crawford cites Frankenhauser favorably and analyzes the government's privilege claim in accordance with the Frankenhauser factors. See Crawford, 469 F. Supp. at 263. Startzell is simply not on point. As stated above, assertions of executive privilege arise in many different contexts, presenting subtle but distinct variations. The Startzell plaintiffs sought to compel a district attorney to explain her rationale for initially pressing charges against them. Startzell, 2006 WL 2945226, at *1. The court found that compelling such a disclosure would violate the government's deliberative process privilege. See id. at *4. The court recognized that the basis of the deliberative process privilege was distinct from the executive privilege applied in Frankenhauser and acknowledged this fact by citing Frankenhauser approvingly. See id.  Thus, neither of the cases cited by plaintiff's counsel purports to overrule Frankenhauser.

1994).

As a threshold matter, the first, second, fifth, and seventh factors have no application to the Laird memorandum. The court finds that the sixth factor weighs in favor of production because the police investigation has been completed. Plaintiffs' suit appears non-frivolous at this juncture; therefore, the court finds that the eighth factor also weighs in favor of production.

The remaining Frankenhauser factors, however, weigh in favor of the privilege. The Laird memorandum contains an evaluative summary of defendants' conduct during the July 7, 2007 arrest of Whitaker and the subsequent events that led to his fatal shooting. Laird's investigation was an apparent attempt by the Springettsbury Police Department to review the incidents leading to Whitaker's death in order to identify any breaches in departmental policy or procedure. In short, this was an attempt to identify whether mistakes were made and, if so, to learn from those mistakes. By their very nature, these types of internal reviews are both backward- and forward-looking. The court concludes that such corrective internal procedures should be encouraged; disclosure of Laird's evaluation would likely chill the robust use of such procedures. Thus, the third and fourth Frankenhauser factors weight against production.

All of the factual information contained in the Laird memorandum is available to plaintiffs from other sources. Defendants have produced each of the six internal interviews Laird conducted, in addition to Springettsbury police reports and the police station video of the incident. (See Defendant's Nov. 12, 2008 Letter

5

at 2 & n.1.) This puts plaintiffs in possession of all of the facts underlying Laird's critical review. Accordingly, the ninth factor weighs heavily against production. The final <u>Frankenhauser</u> factor examines the importance of the information to plaintiffs' case. Our sister courts have described this factor as the "weightiest" in Judge Becker's analytical model. <u>See, e.g.</u>, <u>Crawford</u>, 469 F. Supp. at 263. As described above, the factual information contained in the Laird memorandum simply duplicates that which has already been provided to plaintiffs' counsel. Plaintiffs lack only the memorandum's evaluative analysis. Given the countervailing interests in non-disclosure, the court finds that the tenth factor weighs heavily in defendants' favor.

Moreover, the court has conducted a careful *in camera* review of the Laird memorandum, and this review confirms the analysis set forth above. The document is two and one-half pages long, approximately twenty-five percent of which is devoted to quotations to various departmental policies. The remainder presents a mixture of evaluation and fact, precluding the production of an intelligible, redacted version. Balancing the <u>Frankenhauser</u> factors, and relying upon its independent review, the court finds that executive privilege shields the Laird memorandum from production. The court will thus sustain defendants' objection to producing the document.[7]

---

[7] Defendants also assert a privilege based on the self-critical analysis concept embodied in Federal Rule of Evidence 501. By virtue of the court's ruling on executive privilege grounds, it is unnecessary to reach the merits of defendants' self-critical analysis claim.

### B. Psychological Records

Defendants have also withheld documents regarding Utter's "post-incident counseling records" and "pre-hire psychological evaluations." (Defendant's Nov. 12 Letter at 6-9.) Additionally, defendants have refused production of Utter's post-hire, pre-incident psychological evaluations. During argument on November 13, 2008, plaintiffs' counsel conceded that any records pertaining to post-incident counseling were protected by the psychotherapist-patient privilege embodied in Federal Rule of Evidence 501. Given this concession, the issue is moot.

With respect to pre-hire evaluations and post-hire, pre-incident evaluations, defendants' counsel represented to the court that no such records exist. If true, the discoverability of such records is moot. In order to confirm defendants' representation, however, the court will order defendants to supply the court with Utter's personnel file. The court will review the file and determine if any pertinent documents exist. Utter's file shall be produced *in camera* in order to maintain confidentiality prior to the completion of the court's review.

### C. Disciplinary Reports

The final category of documents in dispute are those reports memorializing disciplinary action taken by the Springettsbury Police Department against Utter. More specifically, the records plaintiffs seek are those pertaining to disciplinary actions unrelated to the July 7, 2007 incident at issue in this case. Defendants argue that these records are not relevant to the incident that occurred on July 7, 2007. Irrespective of the potential impediments to admissibility of such records, the

7

court finds that any such disciplinary reports are discoverable.  Defendants shall produce all such documents forthwith.

### III.  Conclusion

For the foregoing reasons, the court will issue an appropriate order.

 S/ Christopher C. Conner  
CHRISTOPHER C. CONNER  
United States District Judge

Dated: November 14, 2008

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RONALD T. WHITAKER**, **SR.**, | : | **CIVIL ACTION NO. 1:08-CV-0627** |
| **Co-Administrator of the Estate of** | : | |
| **Ronald Taylor Whitaker, Jr.**, *et al.*, | : | |
| | : | |
| **Plaintiffs** | : | **(Judge Conner)** |
| | : | |
| v. | : | |
| | : | |
| **SPRINGETTSBURY** | : | |
| **TOWNSHIP**, *et al.*, | : | |
| | : | |
| **Defendants** | : | |

## ORDER

AND NOW, this 14th day of November, 2008, upon consideration of the parties' discovery dispute, and in light of the telephone conference with counsel for all parties on November 13, 2008, as well as the letter brief delivered to the court by defendants on November 12, 2008, and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. Plaintiffs' oral motion to compel production of the Laird memorandum is DENIED.

2. Plaintiffs' motion to compel production of post-incident psychological evaluation records of Gary Utter is DENIED.

3. Plaintiffs' motion to compel production of pre-incident psychological evaluation records of Gary Utter is DENIED as moot. Defendants shall produce Utter's personnel file *in camera* to allow the court to ensure that no such pre-incident records exist.

4.  Plaintiffs' motion to compel production of documents concerning disciplinary action taken by the Springettsbury Police Department against Gary Utter is GRANTED except with respect to disciplinary actions arising from the July 7, 2007 incident at issue in the above-captioned matter. Defendants shall produce such records forthwith. This directive does not compel the production of any pre-incident reports, similar to the Laird report discussed in the court's memorandum. This paragraph is intended to compel only the production of actual disciplinary action taken against officer Utter.

                                                            S/ Christopher C. Conner
                                                 CHRISTOPHER C. CONNER
                                                 United States District Judge