**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

RONALD T. WHITAKER, SR.,    :
Co-Administrator of the Estate of   :   CIVIL ACTION NO. 1:08-627
Ronald Taylor Whitaker, Jr., et al.,  :
               :   (Judge Christopher C. Conner)
     Plaintiffs,     :
               :
    v.         :
               :
SPRINGETTSBURY TOWNSHIP, et al., :   Filed Electronically
               :
     Defendants.    :

**BRIEF IN SUPPORT OF
DEFENDANT OFFICER GARY UTTER'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

David J. MacMain (I.D. No. 59320)
Janelle E. Fulton (I.D. No. 80027)
LAMB MCERLANE PC
24 East Market Street, Box 565
West Chester, PA  19381-0565
(610) 701-3263
*Attorneys for Defendant, Gary Utter*

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................... i

I.      INTRODUCTION .........................................................................1

II.     RELEVANT PROCEDURAL HISTORY ..............................................3

III.    STATEMENT OF FACTS ...............................................................4

IV.     STATEMENT OF ISSUES ..............................................................5

V.      SUMMARY JUDGMENT STANDARD .................................................5

VI.     ARGUMENT ..............................................................................6

    A.   Plaintiffs' Federal Claims Fail as a Matter of Law ...................................6

    1.   Officer Utter's Use of Deadly Force Was Objectively Reasonable .......6

    2.   There is No Evidence That Officer Utter Failed to Protect or
         Monitor Whitaker ...................................................................12

    3.   The Eighth Amendment Does Not Apply to Plaintiffs' Claims ...........15

    4.   Officer Utter Is Entitled to Qualified Immunity ...................................16

    B.   Plaintiffs' State Law Wrongful Death and Survival Actions Are without
         Factual or Legal Basis ..................................................................18

VII.    CONCLUSION .........................................................................19

# TABLE OF AUTHORITIES

## Cases

*Brooks v. Carrion*, 1996 WL 563897, *2 (E.D. Pa. 1996) ......................................16

*Carswell v. Borough of Homestead*, 381 F.3d 235, 244 (3d Cir. 2004) .................11

*Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991) .....................13

*Estate of Smith v. Marasco*, 318 F.3d 497, 515 (3d Cir. 2003) ...............................7

*Freedman v. City of Allentown*, 853 F.2d 1111 (3d Cir. 1988) ..............................12

*Graham v. Connor*, 490 U.S. 386, 395 (1989) ...................................................7, 15

*Great Am. Assur. Co. v. Ford*, Civ. A. No. 1:08-CV-0576,
    2009 U.S. Dist. LEXIS 70586, *1, *7-*8 (M.D. Pa. Aug. 12, 2009)...................5

*Hubbard v. Taylor*, 399 F.3d 150, 164 (3d Cir. 2005) ...........................................15

*Hudson v. Coxon*, 149 Fed. Appx. 118, 121 (3d Cir. 2005) ...................................15

*Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998).......................................17

*Hunter v. Bryant*, 502 U.S. 224, 229 (1991)................................................... 16, 17

*Karnes v. Skrutski*, 62 F.3d 485, 491 (3d Cir. 1995) ..............................................16

*Metzger by Metzger v. Osbeck*, 841 F.2d 518, 520 (3d Cir. 1988)...........................7

*Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) ..................5

*Pearson v. Callahan*, 129 S. Ct. 808, 815-16, 818 (2009) .....................................16

*Saucier v. Katz*, 533 U.S. 194, 200-01 (2001).................................................. 16, 17

*Smith v. Freland*, 954 F.2d 343, 347 (6th Cir. 1992) .............................................11

*Tennessee v. Garner*, 471 U.S. 1, 11 (1985)................................................................8

*Wheeler v. City of Phila.*, 367 F. Supp. 2d 737, 742 (E.D. Pa. 2005) ......................8

*Whitley v. Albers*, 475 U.S. 312, 318, 106 S. Ct. 1078 (1986) ...............................15

*Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005)......................13

**Statutes**

18 Pa. C.S. § 505(b)(2) ................................................................................................9

**Rules**

Fed. R. Civ. P. 56(c).....................................................................................................5

Defendant Gary Utter, by and through his attorneys, Lamb McErlane PC, respectfully submits this Brief in Support of his Motion for Summary Judgment.

## I.    __INTRODUCTION__

This case arises from an officer-involved shooting on July 7, 2007, in which Defendant Springettsbury Township Police Officer Gary Utter was forced to use deadly force against Plaintiffs' decedent, Ronald T. Whitaker, Jr. ("Whitaker"), when Whitaker violently attacked Officer Utter and disarmed him of his expandable baton after Officer Utter had attempted to save Whitaker from an apparent attempted suicide by hanging at the Springettsbury Township Police Station.

Despite the fact that, after a full and thorough investigation, (1) the Pennsylvania State Police ("PSP"), (2) the York County District Attorney's Office, (3) the Springettsbury Township Police Department ("STPD"), and (4) *__Plaintiffs' own lawyers__* (*see* Mot. to Withdraw (Doc. 43)), found that Officer Utter's use of force was justified as a matter of law (*see* RTW SPD 00765-66)[1], Plaintiffs allege, with no supporting facts or expert opinion, that the shooting was unjustified.  *See* Compl. (Doc. 1); Mot. to Withdraw (Doc. 43).

Unlike most Section 1983 excessive force claims, the *__facts__* of the present

---

[1]  All citations to the record refer to Exhibits that are included in the *Appendix to Defendants' Joint Concise Statement of Material Facts*, which is being filed concurrently with Officer Utter's Motion for Summary Judgment and Supporting Brief.

case are truly ***undisputed***.  First, the facts of the underlying incident were thoroughly investigated and gathered, and served as the basis for the determination by three agencies – the PSP, the York County District Attorney's Office, and STPD, that the use of force was appropriate and lawful.  Second, Plaintiffs own lawyers admitted in a public court filing that, after completing discovery and taking the depositions of all of the officers involved in the incident, they ***"advised Plaintiffs that, in their professional opinion, the evidence obtained in discovery did not support Plaintiffs' claims for violations of the Fourth, Eighth and Fourteenth Amendment [sic] to the United States Constitution and of . . . § 1893."***  Mot. to Withdraw (Doc. 43 ¶ 4).

Plaintiffs have also failed to produce any expert reports supporting any of their claims in this case or contesting the facts developed in the underlying investigation of this incident.

As set forth below, as a matter of clear and well-settled state and federal law, and as previously recognized by the PSP, the York County District Attorney's Office, STPD, and, most notably, Plaintiffs' own lawyers (*see* Doc. 43), Officer Utter's use of deadly force was lawful and justified.  As such, Plaintiffs' claims are meritless, and judgment should be entered in favor of Defendants and against Plaintiffs on all claims related to Officer Utter's use of deadly force, including Plaintiffs' pendent state law wrongful death and survival actions.

2

In addition to this threshold excessive force claim, Plaintiffs assert a claim against Officer Utter for alleged failure to protect Whitaker, which fails as matter of law, since the undisputed evidence establishes that (1) no one – not even Whitaker's closest family members, who were with him hours before the incident – had reason to suspect that Whitaker was at risk to harm himself and (2) Officer Utter's actions – including calling medical personnel to the station to evaluate Whitaker's complaints of pain, monitoring Whitaker while he was in the holding cell, and attempting to save Whitaker's life – clearly demonstrate the Officer's concern for Whitaker's well-being, not the "reckless indifference" standard necessary to sustain this claim.

For these reasons, and the reasons set forth below, Officer Utter is entitled to summary judgment on all of Plaintiffs' claims against him.

## II.    RELEVANT PROCEDURAL HISTORY

Plaintiffs filed a Complaint (Doc. 1) against Springettsbury Township, Springettsbury Township Police Department, Chief of Police David Eshbach, and Officer Gary Utter on April 8, 2008. Plaintiffs' Complaint purported to set forth two (2) causes of action under federal law – excessive force and failure to protect – as well as pendent state law claims of wrongful death and survival, against Officer Utter. *See* Doc. 1. On June 20, 2008, Defendants filed an Answer and Affirmative Defenses to Plaintiffs' Complaint (Doc. 18).

3

The parties have completed extensive discovery, including the depositions of Plaintiffs Ronald Whitaker, Sr. (decedent's father) and Dalea Lynn (decedent's girlfriend and the mother of three (3) of his children), Defendants Officer Utter and Chief David Eshbach, and non-party witnesses, Springettsbury Township Police Officers Christopher Ford, John Krentz, James Miller, William Polizzotto, Jr., and Gregory Witmer, as well as the exchange of written discovery and materials.

On June 23, 2009, Eric Keepers and Howard Silverman, counsel for Plaintiffs, filed a Motion for Leave to Withdraw was Counsel and supporting Brief (Docs. 43, 44), indicating that the evidence obtained during discovery did not support Plaintiffs' claims against Defendants.  By Order dated June 26, 2009 (Doc. 46), the Court granted counsels' Motion for Leave to Withdraw and ordered Plaintiffs to notify the Court whether Plaintiffs intended to retain substitute counsel.  On August 25, 2009, Plaintiffs obtained new counsel.  (*See* Doc. 48.)

Discovery closed on May 18, 2008, and the matter is ripe for summary judgment.

## III.   **STATEMENT OF FACTS**

Pursuant to Rule 56.1, Officer Utter has filed a separate Concise Statement of Material Facts, a copy of which is attached hereto as Exhibit 1 and incorporated herein by reference.

4

**IV.** **STATEMENT OF ISSUES**

    A.    Is Officer Utter entitled to summary judgment on Plaintiffs' federal claims?

    <u>Suggested Answer</u>:    Yes

    B.    If this Court concludes that Officer Utter violated the Constitution – which he denies – is he entitled to qualified immunity?

    <u>Suggested Answer</u>:    Yes

    C.    Is Officer Utter entitled to summary judgment on Plaintiffs' state law claims?

    <u>Suggested Answer</u>:    Yes

**V.** **SUMMARY JUDGMENT STANDARD**

    Summary judgment should be entered "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden is "on the non-moving party to come forth with 'affirmative evidence, beyond the allegations of the pleadings,' in support of its right to relief." *Great Am. Assur. Co. v. Ford*, Civ. A. No. 1:08-CV-0576, 2009 U.S. Dist. LEXIS 70586, *1, *7-*8 (M.D. Pa. Aug. 12, 2009) (Conner, J.) (quoting *Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004)). "This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the

non-moving party on the claims." *Id.* Only if this threshold is met may the cause of action proceed. *Id.* at *8 (citing *Pappas*, 331 F. Supp. 2d at 315).

In this case, it is undisputed that, when Officer Utter attempted to save Whitaker from an apparent suicide attempt (or a feigned attempt to draw the Officer into the room), Whitaker attacked Officer Utter, striking him repeatedly and disarming the officer of his expandable baton. In fear for his life, Officer Utter fired two shots from his service weapon in rapid succession, both of which struck Whitaker, causing fatal injuries. In light of these undisputed facts, Plaintiffs are unable to meet their burden, there is no "colorable" claim or "probative" evidence to establish that Officer Utter should in any way be held liable for the claims asserted, and therefore, Officer Utter is entitled to summary judgment.

## VI.   ARGUMENT

### A.   Plaintiffs' Federal Claims Fail as a Matter of Law

#### 1.   Officer Utter's Use of Deadly Force Was Objectively Reasonable

Plaintiffs' primary claim – that Officer Utter was not justified in using deadly force – cannot survive, because Plaintiffs have provided no evidence to support their bald allegations and, in fact, the undisputed facts and physical evidence in this case refute Plaintiffs' claims.

Claims of excessive force in the course of an arrest are analyzed under the Fourth Amendment's objective reasonableness standard. *Graham v. Connor*, 490

U.S. 386, 395 (1989).  The reasonableness of particular force must be "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving. *Id.* at 396-97.

Ultimately, under the standard of objective reasonableness, the question becomes, were the officer's actions objectively reasonable "in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation?" *Id.* at 397.  Factors considered include the need for the application of force, the relationship between the need and the amount of force that was used, the extent of the injury inflicted, the threat reasonably perceived by the officers, and whether the force was applied in a good faith effort to maintain or restore discipline. *Id.*, 490 U.S. at 396; *see also Metzger by Metzger v. Osbeck*, 841 F.2d 518, 520 (3d Cir. 1988).  The Court may also consider such factors as the severity of the crime, whether there was an immediate threat to the safety of officers or others, whether the suspect was actively attempting to evade arrest, and "the possibility that the persons subject to the police action are violent or dangerous." *Estate of Smith v. Marasco*, 318 F.3d 497, 515 (3d Cir. 2003).  Defendants can prevail "on summary judgment if the district court concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was

7

objectively reasonable under the circumstances." *Wheeler v. City of Phila.*, 367 F. Supp. 2d 737, 742 (E.D. Pa. 2005).

Regarding the use of deadly force, only when an officer "has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or others," is the use of deadly force permissible. *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). Likewise, under Pennsylvania law, a police officer is justified in using deadly force when he believes that it is necessary to protect himself against, *inter alia*, death or serious bodily injury. 18 Pa. C.S. § 505(b)(2).

Notably, Plaintiffs have produced no evidence whatsoever to contradict Officer Utter's version of the facts. Thus, in this case, the *truly undisputed* facts establish that:

- When Officer Utter tried to save Whitaker's life from an apparent or feigned attempted suicide, Whitaker attacked Officer Utter, screaming and punching the Officer and attempting to bite the Officer's arm and wrist. RTW SPD 00008; PSP 0128; Utter 49, 70.

- Officer Utter was initially able to use the Taser to defend himself against Whitaker's attack, but the Taser became ineffective after the initial deployment. RTW SPD 00008; PSP 0128, 0134-35, 0137-39, 130; Utter 49-50, 52-53.

- Whitaker continued to charge at Officer Utter, who backed away from Whitaker's wild attack and repeated punches, and the Officer was quickly cornered at the end of the hallway.  RTW SPD 00008; PSP 0133-34, 0141-43; Utter 50.

- Officer Utter attempted to retreat through a door at the end of the hallway, but Whitaker slammed the door shut and continued to scream and to land numerous punches to Officer Utter's body and head, knocking Officer Utter's glasses off his face.  RTW SPD 00008; PSP 0134; Utter 50.

- Officer Utter was concerned that one of Whitaker's punches would knock him unconscious and that Whitaker would then take Officer Utter's gun.  Utter 66.

- While struggling with Whitaker, Officer Utter felt Whitaker pulling on the right side of the Officer's utility belt as if attempting to remove items from that side of the belt, which held several weapons, including his gun, his expandable baton/ASP, and OC spray.  RTW SPD 00008; PSP 0135-36, 0142-43; Utter 50, 195.

- Whitaker was able to remove Officer Utter's expandable baton/ASP, which was located next to Officer Utter's gun.  PSP 0006; Utter 180.

9

- With Whitaker continuing to punch the Officer about the head and body, pull on his utility belt, and in possession of the Officer's baton, and with the Taser being ineffective and knowing that he was alone with no assistance on the way, Officer Utter felt that he had exhausted all less-than-lethal means of force and, in fear that he would be severely injured or killed, Officer Utter drew his duty weapon and fired two (2) shots in a law enforcement technique called a "double tap," which is the firing of two (2) shots in quick succession so that it is one continuous motion.  RTW SPD 0006, 0008-9; PSP 0135-36; Utter 50, 111, 196-97, 204-05.

Based on these undisputed facts, Officer Utter was justified, under both well-settled federal case law and express Pennsylvania statutory law, in using deadly force in self-defense.

Notably, despite extensions by this Court for Plaintiffs to seek and consult with experts, Plaintiffs have produced no expert reports contesting either the facts or the forensics of this incident, or the actions of Officer Utter.  Thus, Plaintiffs have failed to provide any evidence or opinions disputing the facts as testified to by Officer Utter and established by the investigations performed by the PSP, the York County District Attorney's Office, and STPD.

Because Plaintiffs have no facts or evidence to support their claims, it is expected that they will rely on speculation, innuendo, and conclusory allegations – all of which are expressly prohibited from preventing summary judgment to create a factual dispute where none exists. *Anderson*, 477 U.S. at 247-48.

In sum, "'we must never allow the theoretical, sanitized world of our imagination to replace the dangerous and complex world that policemen face every day. What constitutes 'reasonable' action may seem quite different to someone facing a possible assailant than to someone analyzing the question at leisure.'" *Carswell v. Borough of Homestead*, 381 F.3d 235, 244 (3d Cir. 2004) (quoting *Smith v. Freland*, 954 F.2d 343, 347 (6th Cir. 1992)). When reviewing the situation faced by Officer Utter – with Whitaker violently attacking him and attempting to harm him and disarm him – it is clear that an objectively reasonable police officer would have believed that his life was in immediate danger. Indeed, Officer Utter resorted to deadly force because he believed that Whitaker was going to kill or seriously injure him. *See* RTW SPD 0006, 0008-9; PSP 0135-36; Utter 50, 111, 196-97, 204-05.

Applying the facts of this case with the standards set forth under Pennsylvania law and in *Tennessee v. Garner*, as determined by the PSP, the York County District Attorney's Office, STPD, and Plaintiffs' own lawyers, Officer

Utter's use of deadly force was clearly justified. Accordingly, Officer Utter is entitled to summary judgment on Plaintiffs' excessive force claim.

### 2. There is No Evidence That Officer Utter Failed to Protect or Monitor Whitaker

Plaintiffs allege that Officer Utter "failed to take necessary and available precautions to protect Decedent, as is required by the Fourth, Eighth and Fourteenth Amendments to the United States Constitution." Compl. (Doc. 1) at ¶ 32. In support of this proposition, Plaintiffs cite *Freedman v. City of Allentown*, 853 F.2d 1111 (3d Cir. 1988). *See id.* However, this is not a case, like *Freeman*, where a defendant officer failed to prevent a detainee from committing suicide. On the contrary, *because* of Officer Utter's attention to Whitaker, Officer Utter prevented Whitaker from committing suicide (if that was Whitaker's intention). Furthermore, it was only because Officer Utter *did* properly monitor Whitaker, and because Officer Utter *was not* indifferent to Whitaker's needs, that Whitaker was able to ambush Officer Utter as he worked to save Whitaker, who he thought was attempting to hang himself. Finally, because Officer Utter *did* care about Whitaker's well-being, Officer Utter had already called Springettsbury EMS to the station to evaluate Whitaker's complaints of pain from the underlying theft committed by Whitaker, and, as such, the ambulance arrived at the station moments after the shooting. RTW SPD 00007, 00009; PSP 0021, 0121-22; Utter 33, 36, 67; Miller 56.

In order to survive summary judgment, Plaintiffs must present evidence that would allow a jury to conclude that "(1) the detainee had a 'particular vulnerability to suicide,' (2) the custodial officer or officers knew or should have known of that vulnerability, and (3) those officers 'acted with reckless indifference' to the detainee's particular vulnerability." *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005) (quoting *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991) ("*Colburn II*")).

In this case, there is no evidence whatsoever that Whitaker was suicidal, let alone that Officer Utter knew or should have known that Whitaker would attempt to take his own life. On the contrary, although he had acted irrationally at the supermarket, all of the evidence indicates that, by the time the Springettsbury Officers arrived, Whitaker was calm, lucid and apologetic. RTW SPD 00007, 00013; PSP 0005, 0120; Utter 22-23, 96-97, 190, 198-99, 201-02. Additionally, both Plaintiffs Ronald Whitaker, Sr. and Dalea Lynn spent several hours with Whitaker on the day of the incident, and neither of these family members, who knew Whitaker better than anyone else – and certainly better than a stranger like Officer Utter – noticed anything unusual about Whitaker that day. *See* Whitaker Sr. 37-39. Indeed, Whitaker's father described Whitaker as "happy" and in good spirits earlier that day. Whitaker Sr. 37-39. Certainly, if Whitaker's own family members

did not have any suspicion that Whitaker was a suicide risk, it cannot be said that Officer Utter should have known of such a risk.

Moreover, the undisputed evidence demonstrates that Officer Utter exhibited the *opposite* of "reckless indifference" toward Whitaker.  First, at Whitaker's request, Officer Utter put his car keys in his vehicle so his girlfriend or wife could retrieve it.  *See* RTW SPD 0007; PSP 00119; Utter 17; Witmer 19-20.  Second, when Whitaker complained to Officer Utter that his ribs hurt from being tackled by customers at the Giant, Officer Utter called for Springettsbury EMS to examine him.  *See* RTW SPD 00007; PSP 0121-22, 0141; Utter 33, 36.  Third, when Officer Utter saw on the surveillance monitor that Whitaker was on the floor of the holding cell, he rushed to the holding cell to provide aid.  *See* RTW SPD 00007-8; PSP 0127; Utter 47.  And finally, when Officer Utter realized that Whitaker had fashioned a make-shift noose from his shoelace and believed that Whitaker's life was in danger, Officer Utter attempted to remove the shoelace, only to be viciously attacked by Whitaker.  *See* RTW SPD 00008; PSP 0128; Utter 49, 70.

In sum, not only have Plaintiffs failed to discover any evidence that would allow a jury to conclude (1) that Whitaker had a "particular vulnerability to suicide," (2) that Officer Utter "knew or should have known" of that vulnerability, or (3) that Officer Utter "acted with reckless indifference" to Whitaker's particular vulnerability, but the undisputed evidence demonstrates the opposite: (1) that there was no evidence

14

– not even to Whitaker's closest family members – that Whitaker was a suicide risk

and (2) that Officer Utter demonstrated caring and concern for Whitaker's well-being.

As such, Officer Utter is entitled to summary judgment on this claim as well.

### 3. The Eighth Amendment Does Not Apply to Plaintiffs' Claims

Plaintiffs claim that Officer Utter violated the Eighth Amendment to the

United States Constitution and subjected Whitaker to "cruel and unusual

punishment." *See* Compl. (Doc. 1) ¶¶ 31, 32, 43. However, "[t]he Eighth

Amendment 'was designed to protect those *convicted* of crimes and consequently

the [Cruel and Unusual Punishment] Clause applies only *after* the State has

complied with constitutional guarantees traditionally associated with criminal

prosecutions.'" *Hubbard v. Taylor*, 399 F.3d 150, 164 (3d Cir. 2005) (quoting

*Whitley v. Albers*, 475 U.S. 312, 318, 106 S. Ct. 1078 (1986)) (emphasis added);

*Hudson v. Coxon*, 149 Fed. Appx. 118, 121 (3d Cir. 2005) (quoting *Graham*, 490

U.S. at 398-99).

Since Whitaker's encounter with Officer Utter took place prior to a

conviction, and since the "Eighth Amendment's Cruel and Unusual Punishments

Clause does not apply until 'after sentence and conviction,'" *Hubbard*, 399 F.3d at

165 (quoting *Graham*, 490 U.S. at 392 n.6), Plaintiffs' Eighth Amendment claim

fails as a matter of law.

### 4.    Officer Utter Is Entitled to Qualified Immunity

While it is clear and undisputed that Officer Utter's actions were reasonable, appropriate, and lawful under the circumstances, and thus do not amount to a constitutional violation, even if the Court finds the issue too close to call in this case, Officer Utter is nevertheless entitled to the privilege of qualified immunity, which "protects police officers from facing suit, not merely liability." *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001).

A police officer is entitled to qualified immunity if a reasonable officer could have believed that his conduct was lawful in light of clearly established law and the information the officer possessed. *Karnes v. Skrutski*, 62 F.3d 485, 491 (3d Cir. 1995); *Brooks v. Carrion*, 1996 WL 563897, *2 (E.D. Pa. 1996). Stated differently, qualified immunity gives police officers "ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991).

The *Saucier* Court reiterated the two-step test[2] to determine whether a law enforcement officer is entitled to qualified immunity: "first . . . whether a

_____

[2] In light of the Supreme Court's recent decision in *Pearson v. Callahan*, 129 S. Ct. 808, 815-16, 818 (2009), which relaxed the two-step *Saucier* framework for evaluating the defense of qualified immunity, the Court need not first determine whether Officer Utter violated Plaintiffs' constitutional rights. However, the facts of this case logically fit the *Saucier* framework.

16

constitutional right would have been violated under the facts alleged; second,

assuming the violation is established, . . . whether the right was clearly

established." *Id.* at 200. At the second step, "clearly established" requires that "it

would be clear to a reasonable officer that his conduct was unlawful in the

situation he confronted." *Id.* at 202. In reaching its determination, the Court

should ask if Officer Utter's actions were reasonable in light of the clearly

established law and the information known to the officer, not whether another

reasonable, or more reasonable, interpretation of the events can be constructed

after the fact. *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998) (citing

*Hunter*, 502 U.S. at 228). Thus, this Court must determine whether Officer Utter's

actions were those that a reasonable officer could have taken under the

circumstances as perceived by Officer Utter. Clearly, this question should be

answered affirmatively.

First, Officer Utter should be afforded qualified immunity as to the

excessive force claim. The undisputed evidence of record establishes that Officer

Utter's use of deadly force was reasonable and justified, because he was in fear for

his life as he was being savagely attacked by Whitaker. RTW SPD 00008-9; PSP

0135-36; Utter 50, 111, 196-97, 204-05. Indeed, after a full and complete

investigation, three (3) separate law enforcement agencies – the PSP, the York

County District Attorney's Office, and STPD – as well as Plaintiffs' lawyers,

17

whom Plaintiffs retained to advocate on their behalf – all of whom had unlimited time and the benefit of 20/20 hindsight, videotape, and reports, none of which Officer Utter had – all determined that Officer Utter's use of deadly force was reasonable and justified under the circumstances.

Second, Officer Utter should, at a minimum, be afforded qualified immunity from Plaintiffs' failure to protect claim.  Namely, there has been no evidence that Officer Utter violated clear and controlling law – indeed, he had called an ambulance to evaluate Whitaker's complaints of pain, and he monitored Whitaker by video surveillance while he completed his paperwork, which is how Officer Utter knew that Whitaker appeared to be in distress.

In sum, it is clear that a reasonable police officer, facing the same circumstances, would have acted the same as Officer Utter.  Accordingly, should the Court find an underlying constitutional violation, which Officer Utter denies, the undisputed facts establish that Officer Utter is entitled to qualified immunity as to Plaintiffs' § 1983 claims.

### B.    Plaintiffs' State Law Wrongful Death and Survival Actions Are without Factual or Legal Basis

For the reasons discussed in Section VI(A)(1) *supra* – namely, that Officer Utter's use of deadly force was reasonable and justified – Plaintiffs' derivative state law wrongful death and survival actions also fail and judgment should be entered in

favor of Officer Utter on those claims as well.

## VII.  <u>CONCLUSION</u>

For the foregoing reasons, Defendant Gary Utter respectfully requests this

Court enter summary judgment in his favor and against Plaintiffs on all claims.

Respectfully submitted,

Dated: <u>September 3, 2009</u>          <u>/s/ David J. MacMain</u>
David J. MacMain (I.D. #59320)
Janelle E. Fulton (I.D. # 80027)
LAMB MCERLANE PC
24 East Market Street, Box 565
West Chester, PA  19381-0565
(610) 701-3263
*Attorneys for Defendant, Gary Utter*

19

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this brief is in compliance with the type/volume requirements set forth in Local Rule 7.8(b)(2) as it contains 4,058 words.

Dated: <u>September 3, 2009</u>      <u>/s/ David J. MacMain</u>
                                     David J. MacMain (I.D. #59320)
                                     Janelle E. Fulton (I.D. # 80027)
                                     LAMB MCERLANE PC
                                     24 East Market Street, Box 565
                                     West Chester, PA  19381-0565
                                     (610) 701-3263
                                     *Attorneys for Defendant, Gary Utter*

<u>**CERTIFICATE OF SERVICE**</u>

I, David J. MacMain, hereby certify that on this 3rd day of September 2009, I

caused a true and correct copy of the foregoing Brief in Support of Defendant Gary

Utter's Motion for Summary Judgment to be served upon the following via the ECF

system of the United States District Court for the Middle District of Pennsylvania:

> Matthew B. Weisberg, Esquire
> Prochniak & Weisberg P.C.
> 7 South Morton Avenue
> Morton, PA  19070
> mweisberg@ppwlaw.com
> *Counsel for Plaintiffs*


> Brian P. Gabriel, Esquire
> Campbell Durrant Beatty Palombo & Miller, P.C.
> 555 Grant Street, Suite 310
> Pittsburgh, PA  15219
>  bgabriel@cdblaw.com
> *Attorneys for Defendants, Springettsbury Township,*
> *Springettsbury Township Police Department,*
> *Chief of Police David Eshbach*

This *Certificate of Service* and the said filing are intended to be available for

viewing and downloading from the ECF system of the United States District Court

for the Middle District of Pennsylvania.


> /s/ David J. MacMain_____
> David J. MacMain