**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RONALD T. WHITAKER, SR., et al. | : | |
| Co-Administrator of the Estate of | : | NO. 1:08-CV-627 |
| Ronald Taylor Whitaker, Jr., et al., | : | |
| | : | (Judge Christopher C. Conner) |
| Plaintiffs, | : | |
| | : | (Magistrate Judge Martin Carlson) |
| v. | : | |
| | : | |
| SPRINGETTSBURY TOWNSHIP, et al., | : | |
| | : | |
| Defendants. | : | Filed Electronically |

**UNOPPOSED MOTION TO PLACE**
**<u>VIDEOTAPED EVIDENCE UNDER SEAL</u>**

Defendants hereby move this Honorable Court, *nunc pro tunc*, for an Order

placing the video of the underlying incident, which was filed as Exhibit A to

Plaintiffs' Brief in Opposition to Defendants' Summary Judgment Motions (Doc.

No. 68) and as Exhibit 1 to Defendants' Reply Brief (Doc. No. 70), and the video

of Officer Utter's discovery deposition, attached as Exhibit 7 to Defendants' Reply

Brief (Doc. No. 70), under seal, and for a protective order preventing Plaintiffs

from producing the videos to the media or the public.  Plaintiffs' will not oppose

Defendants' Motion.  In support of their Motion, Defendants state as follows:

1.      On April 8, 2008, Plaintiffs Ronald T. Whitaker, Sr. and Dalea Lynn,
filed a federal civil rights action under 42 U.S.C. § 1983 against Defendants based
upon the July 7, 2007 death of Ronald Whitaker, Jr. ("Whitaker").  *See* Compl.
(Doc. No. 1).

2.      The underlying incident at Springettsbury Police Department
("SPD"), and the resulting death of Whitaker, was captured on surveillance video.

3.      Defendants produced a copy of the SPD video to Plaintiffs during the
course of discovery.

4.      Plaintiffs' former counsel filed a Motion for Leave to Withdraw as
Counsel (Doc. Nos. 43, 44), indicating that the evidence obtained during
discovery, including the SPD video, did not support Plaintiffs' claims against
Defendants.

5.      On September 3, 2009, Defendants filed Motions for Summary
Judgment with Supporting Briefs.  *See* Doc. Nos. 49-53.

6.      On November 12, 2009, Plaintiffs filed a Brief in Opposition to
Defendants' Motions for Summary Judgment, to which Plaintiffs attached a copy
of the SPD surveillance video as Exhibit A.  *See* Doc. No. 68.

7.      On November 16, 2009, the Court ordered Defendants to make a copy
of the SPD video available to the Court.  *See* Doc. No. 69.

8.     On November 25, 2009, Defendants filed a Reply to Plaintiffs' Brief in Opposition and attached a compact disc containing the SPD video, which was marked as Exhibit 1.  *See* Doc. No. 70.

9.     The compact disc filed by Defendants also contained a portion of the videotaped discovery deposition of Defendant Gary Utter, which was marked as Exhibit 7 to Defendants' Reply Brief.  *See* Doc. No. 70.

10.     The portion of the Utter deposition video (Exhibit 7) depicts portions of the SPD video of the incident.  *See id.* at Ex. 7.

11.     On December 4, 2009, a member of the news media requested a copy of the compact disc containing both the SPD video and the portion of the videotaped discovery deposition of Defendant Gary Utter.  *See* Doc. No. 77.

12.     Defendants respectfully request that the Court deny the media's request for the videos and that the Court further issue an Order placing both the SPD video and the portion of Utter's videotape deposition, which depicts the SPD video, under seal and precluding Plaintiffs from producing copies of the videos to the media or the public.

13.     While, "courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents . . . the right to inspect and copy judicial records is not absolute [, and] . . . [e]very

court has supervisory power over its own records and files." *Nixon v. Warner Communications*, 435 U.S. 589, 598 (U.S. 1978).

14.     "[T]the decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the  particular case." *Id.* at 599.

15.     "Videotapes are subject to a higher degree of potential abuse than transcripts.  They can be cut and spliced and used as 'sound-bites' on the evening news or sports shows." *Felling v. Knight*, No. IP 01-0571-C-T/K, 2001 U.S. Dist. LEXIS 22827, *1, *9 (S.D. Ind. Dec. 21, 2001) (attached as Exhibit A).

16.     The *Felling* Court also ruled that the potential embarrassment that would result from publication of the deposition videos warranted protection.  *Id.*

17.     Defendants request that these videos be placed under seal for several reasons.

18.     First, publication of the videos will negatively impact Defendants' right to a fair trial, because the SPD video is incomplete – namely, due to the fact that the SPD video 1) is silent (i.e., does not have sound) and 2) was recorded at only 3 or 4 frames per second, as opposed to 30 frames per second, at which the average home-use video camcorder records, and thus the video from the incident appears choppy, rather than fluid, and only a fraction of the action was recorded As such, the video could be misleading if viewed out of context and without

Utter's explanation of the events as they unfolded, and, thus, Defendants would be prejudiced by its dissemination.  *See Felling*, 2001 U.S. Dist. LEXIS 22827 at *9.

19.    Second, in light of the nature of the incident, both the incident and the subsequent civil lawsuit have garnered significant media attention, and several newspaper articles have been published and television broadcasts have been aired regarding the incident.  As such, publication of the silent, stop-frame SPD video – out of context and without Utter's narration – by the news media[1] to the jury pool will taint the jury pool and severely prejudice the Defendants.  *See United States v. Weed*, 184 F. Supp. 2d 1166, 1176-77 (N.D. Okla. 2002) ("Given the nature of the crime alleged in this case, the media interest in this case has been significant . . . . Numerous newspaper articles and television stories have been broadcast . . ., from which any potential *venire* will be drawn.  It is, therefore, likely that the contents of the tape, or at least a summary of its contents would be widely reported in this community.  The government's ability to obtain a fair trial would be compromised because the community of potential jurors would have been exposed to only one piece of the otherwise complex puzzle . . . .  The Court finds that avoiding the prejudice caused by such a one-sided doling out of evidence prior to trial provides a substantial reason for sealing the videotape prior to trial.  The Court finds that

---

[1] Although to date only print media has requested copies of the videos, Defendants anticipate that, given the sensational aspect of the videos, television media outlets will also likely seek copies of the videos, which would in all likelihood be shown on television and the internet throughout the Middle District and beyond.

sealing the videotape until trial is essential to preserve the government's right to a fair trial.").

20.     Third, the content of the SPD video (and the Utter deposition video, which depicts the SPD video) is highly sensitive in nature in that it depicts the death of Whitaker, which was an extremely traumatic event for Utter and, Defendants assume, would be equally traumatic for Whitaker's family.

21.     For these reasons, Defendants respectfully request that the Court issue an Order placing the videos under seal and precluding Plaintiffs from making available or providing copies of the videos to the media or the public.

22.     Contrary to the prejudice faced by Defendants by the release of the videos, neither the media nor the public will be prejudiced by sealing the videos, given that significant information regarding the incident, including the investigation reports of the Pennsylvania State Police and the text of deposition transcripts, has been made publically available.

23.     The Court has the option of placing the videos under seal for a limited amount of time, namely until this litigation (including any appeal) is fully and finally concluded.

24.     Plaintiffs' counsel has advised defense counsel that Plaintiffs will not oppose the present Motion.

WHEREFORE, Defendants respectfully request that the Court issue an

Order placing the Springettsbury Township surveillance video and the video of

portions of the discovery deposition of Defendant Gary Utter under seal.

Respectfully submitted,


/s/ Brian P. Gabriel
Brian P. Gabriel
Campbell Durrant Beatty
   Palombo & Miller, P.C.
555 Grant Street, Suite 310
Pittsburgh, PA  15219
(412) 395-1267
*Attorneys for Defendants*
*Springettsbury Township,*
*Springettsbury Township Police Dep't,*
*and Chief of Police David Eshbach*


Dated: <u>December 4, 2009</u>

/s/ David J. MacMain
David J. MacMain (I.D. #59320)
Janelle E. Fulton (I.D. #80027)
LAMB MCERLANE PC
24 East Market Street, Box 565
West Chester, PA  19381-0565
(610) 701-3263
*Attorneys for Defendant Gary Utter*

## <u>CERTIFICATE OF CONCURRENCE</u>

I, David J. MacMain, attorney for Defendant, Gary Utter, hereby certify that

I have conferred with Matthew Weisberg, Esquire, counsel for Plaintiffs, who

advised that Plaintiffs do not concur in the foregoing Motion to Place Videotaped

Evidence under Seal, but they will not oppose the Motion.

/s/ David J. MacMain
David J. MacMain
Janelle E. Fulton
LAMB MCERLANE PC
24 East Market Street, Box 565
West Chester, PA  19381-0565
(610) 701-3263
*Attorneys for Defendant, Gary Utter*

## <u>CERTIFICATE OF SERVICE</u>

I, David J. MacMain, hereby certify that on this 4th day of December 2009, I caused a true and correct copy of the foregoing Unopposed Motion to Place Videotaped Evidence under Seal to be served upon the following via the ECF system of the United States District Court for the Middle District of Pennsylvania:

> Matthew B. Weisberg, Esquire
> Prochniak & Weisberg P.C.
> 7 South Morton Avenue
> Morton, PA 19070
> mweisberg@ppwlaw.com
> *Counsel for Plaintiffs*

This *Certificate of Service* and the said filing are intended to be available for viewing and downloading from the ECF system of the United States District Court for the Middle District of Pennsylvania.


/s/ David J. MacMain
David J. MacMain

# Exhibit A

2001 U.S. Dist. LEXIS 22827, *



LEXSEE 2001 U.S. DIST. LEXIS 22827

**RONALD FELLING, Plaintiff, vs. ROBERT KNIGHT, Defendant.**

**IP 01-0571-C-T/K**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF INDIANA, INDIANAPOLIS DIVISION**

*2001 U.S. Dist. LEXIS 22827*

**December 21, 2001, Decided**

**DISPOSITION:**    [*1]  Non-Parties' Motion for a Protective Order DENIED in part and GRANTED in part.

**COUNSEL:** For FELLING, RONALD, plaintiff: HENRY J PRICE, PRICE POTTER JACKSON WAICUKAUSKI & MELLOWITZ PC, INDIANAPOLIS, IN.

For KNIGHT, ROBERT, defendant: RUSSELL E YATES, YATES & LEAL LLP, DENVER, CO.

For KNIGHT, ROBERT, defendant: JAMES H VOYLES, VOYLES ZAHN PAUL HOGAN & MERRIMAN, INDIANAPOLIS, IN.

For INDIANA UNIVERSITY, defendant: GREGORY J UTKEN, BAKER & DANIELS, INDIANAPOLIS, IN.

**JUDGES:** John Daniel Tinder, Judge, United States District Court.

**OPINION BY:** John Daniel Tinder

**OPINION**

**ENTRY ON NON-PARTIES' MOTION FOR A PROTECTIVE ORDER**

1  Though this Entry is a matter of public record and is being made available to the public on the court's web site, it is not intended for commercial publication either electronically or in paper form. The reason for this caveat is to avoid adding to the research burden faced by litigants and courts. Under the law of the case doctrine, the ruling or rulings in this Entry will govern the case presently before this court. *See, e.g., Trs. of Pension, Welfare, & Vacation Fringe Benefit Funds of IBEW Local 701 v. Pyramid Elec., 223 F.3d 459, 468 n.4 (7th Cir. 2000)*; *Avitia v. Metro. Club of Chicago, Inc., 49 F.3d 1219, 1227 (7th Cir. 1995)*. However, a district judge's decision has no precedential authority and, therefore, is not binding on other courts, on other judges in this district, or even on other cases before the same judge. *See, e.g., Howard v. Wal-Mart Stores, Inc., 160 F.3d 358, 359 (7th Cir. 1998)* ("a district court's decision does not have precedential authority"); *Malabarba v. Chicago Tribune Co., 149 F.3d 690, 697 (7th Cir. 1998)* ("district court opinions are of little or no authoritative value"); *United States v. Articles of Drug Consisting of 203 Paper Bags, 818 F.2d 569, 571 (7th Cir. 1987)* ("A single district court decision . . . has little precedential effect. It is not binding on the circuit, or even on other district judges in the same district."). Consequently, though this Entry correctly disposes of the legal issues addressed, this court does not consider the discussion to be sufficiently novel or instructive to justify commercial publication of the Entry or the subsequent citation of it in other proceedings.

[*2]  Mike Davis, John Treloar, and Indiana University (the "Non-Parties") filed a motion for a protective order to prevent the Plaintiff from disseminating transcripts and videotapes taken at the depositions of Davis and Treloar. Plaintiff opposes the Non-Parties' Motion for a Protective Order. WTHR has intervened in this action and also opposes the motion.

2001 U.S. Dist. LEXIS 22827, *

This court now denies the Non-Parties' request with respect to the deposition transcripts, but grants the request for the videotapes of the deposition.

### I. Factual Background

On March 26, 2001, Plaintiff, Ronald Felling, filed a complaint against Robert Knight and Indiana University ("I.U.") alleging invasion of privacy, wrongful termination, negligent supervision, violations of *Section 1983*, battery, assault, and outrage. The claims against I.U. were dismissed on August 7. On October 23, Plaintiff took depositions of Mike Davis and John Treloar. A dispute arose over whether the depositions could be released to the press. Late in the afternoon of October 23, this court held a telephonic conference concerning this dispute. During this conference, the court granted the Non-Parties a temporary protective order, precluding the release [*3] of the contents of the depositions, until the court could more fully look at the merits of the arguments. The court gave the Non-Parties and Knight until October 29 to file motions as to why the depositions should be covered by a permanent protective order. On October 29, the Non-Parties filed under seal a motion for a protective order and memo in support of the motion and Knight filed a motion for a protective order. [2] On November 5, Felling filed a motion opposing the protective order. That same day, WTHR filed a motion to intervene, a motion to unseal, and a memo in support of the motion. On November 6, WTHR's motion to intervene was granted. In an entry dated November 8, this court ruled that the documents would remain under seal until such time as this court could more fully examine the merits of the Non-Parties' motion. That time has now come.

2  The October 29 filing by Knight (Document # 28) was his second request for a protective order. He has since filed a third. Knight's October 29 filing was not done under seal, and it does not disclose the contents of the depositions. It does, though, succinctly describe the gist of the controversy about the protective order sought by the Non-Parties. In this motion, Knight argues essentially the same issues as those raised by the Non-Parties. The court will not separately address Knight's motion because of the similarity, and instead, will address all of the protective order issues related to the Davis and Treloar depositions in this single entry.

[*4] **II. Discussion**

The Non-Parties argue that the entire contents of the Davis and Treloar depositions should be covered by the protective order in order to protect the Non-Parties from annoyance, embarrassment, oppression, or undue burden or expense. *See Fed. R. Civ. P. 26(c)*. In the alternative they contend that this court should prohibit Felling from disclosing certain designated portions of the depositions and from releasing any portion of the videotapes of the depositions. Felling wanted the ability to disseminate the information immediately after taking the depositions, arguing that not allowing him to do so was a violation of the *First Amendment*. Although Felling lost that battle and the materials were covered by a temporary protective order, Felling now wins the war, or at least this campaign.

Trial *Rule 26* provides that: "upon motion by a party or by a person from whom discovery is sought . . . the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Although pretrial discovery is usually conducted in private, the Seventh [*5] Circuit has endorsed a presumption of public access to discovery materials based on the fact that:

> the public at large pays for the courts and therefore has an interest in what goes on at all stages of a judicial proceeding . . . . That interest does not always trump the property and privacy interests of the litigants, but it can be overridden only if the latter interests predominate in the particular case, that is, only if there is good cause for sealing a part or the whole of the record in that case.

*Citizens Nat'l Bank v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999).

In order to seal any part of the record of a case, the party moving for the protective order must establish that good cause exists. [3] *Id.* A finding of good cause must be based on a particular factual demonstration of potential harm, not on conclusory statements. 8 Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, *Federal Practice and Procedure* § 2035, at 483-86 (2d ed. 1994). Allegations of general injury are insufficient to constitute good cause; the movant must show that disclosure will cause a clearly defined and serious injury. *Patt v. Family Health Sys., Inc.*, 189 F.R.D. 518, 522 (E.D. Wis. 1999). [*6]

3  WTHR claims to have a *First Amendment* right of access to the depositions. However, the Supreme Court has held that "where, as in this case, a protective order is entered on a showing

2001 U.S. Dist. LEXIS 22827, *

of good cause as required by *Rule 26(c)*, is limited to the context of pretrial civil discovery, and does not restrict the dissemination of the information if gained from other sources, it does not offend the *First Amendment*." *Seattle Times Co. v. Rhinehart, 467 U.S. 20, 37, 81 L. Ed. 2d 17, 104 S. Ct. 2199 (1984).*

In this case, the Non-Parties claim that the topics in the depositions including Davis' coaching techniques, alleged instances of disloyalty, and incidents involving current and former I.U. basketball players, "would be damaging to the reputation of non-parties and could cause unnecessary embarrassment to them." (Mem. in Support of Mot. for Protective Order by Non-Parties at 9.) The Non-Parties further claim that "the depositions contain irrelevant information and non-public information, and their dissemination [*7] in the newspaper would invade witness privacy." (*Id.* at 5.) [4] Although most of the contested portions of the deposition do not appear to be relevant to the dispute at hand, they also do not appear to be so sensitive or confidential as to warrant sealing the depositions. For example, the Non-Parties object to a series of questions about Davis' religion, including questions as to what church he attends and his role in the church. It is hard to see how these questions might relate to the lawsuit against Knight; however this information is not the kind information that would greatly embarrass Davis and does not predominate over the public's interest in judicial proceedings. [5] In another contested passage, Davis discussed the behavior of Pat Knight at games and while on the road. Again, the information seems irrelevant to the litigation, but the fact that Pat Knight became angry after an I.U. loss is hardly the sort of embarrassing news warranting a protective order.

4    Although not in their brief, the Non-Parties during a telephone conference mentioned a concern that the pretrial publicity would inhibit and perhaps prevent the selection of an impartial jury. Defendant Knight does argue this point at pages six and seven of his motion. This court notes that there has already been substantial public reporting concerning many aspects of Defendant Knight's life since he began coaching at I.U. in the early 1970s. The addition of the information from the Davis and Treloar depositions is unlikely to significantly affect the average person's views of Defendant Knight, or even tip the scale slightly in that regard. Defendant Knight may have enjoyed and/or endured more media coverage in Indiana than any other person during the past three decades. The public release of what Davis and Treloar say in

the depositions will be the equivalent of a drop of rainwater landing in Lake Michigan.

[*8]

5    In fact, these subject have been covered in various media profiles of Davis published or aired since he became the head basketball coach at I.U. Various media accounts suggest that Davis has even submitted to media interviews about these subjects.

The rest of the Non-Parties concerns involve matters that are similarly irrelevant to the underlying litigation, but are not unduly embarrassing to the Non-Parties. Furthermore, nothing in the depositions can fairly be categorized as a trade secret or the type of confidential information that there is a real measurable interest in protecting. All of the references to coaching matters relate to general matters of style rather than particular techniques or strategies. Finally, much of this information is already in the public domain, through coaches' talk shows or the media aura that surrounded Defendant Knight during and after his coaching tenure at I.U. Consequently, no good cause has been shown to prohibit disclosure of the contents of the deposition. [6]

6    Certainly, the court recognizes that the production of information during the discovery process can be somewhat coerced and that to the extent that the information produced is irrelevant to the litigation, but damaging to reputation or privacy, a protective order could be justified. *See Seattle Times Co. v. Rhinehart, 467 U.S. 20, 35-36, 81 L. Ed. 2d 17, 104 S. Ct. 2199 (1984).* However, here the information, albeit slim on relevancy in many respects, is not damaging at all to the reputation or privacy of the deponents. The information is also available from numerous other sources. Therefore, this litigation is not a coercive event causing the release of the subjects of the deposition for the first time. Thus, the appropriateness of a protective order is diminished. The court's review of these depositions has alerted the court, though, to concerns about whether counsel for Plaintiff are inquiring about irrelevant subjects incidentally or purposefully. If the latter, the court may need to consider close supervision of subsequent depositions to prevent an abuse of the discovery process. The depositions at issue are models of wasting most of the deposition time on matters collateral to the subject of the litigation.

[*9]  This is not to say that this court approves of releasing information about the Non-Parties in order to embarrass and frustrate them. In an effort to avoid just that sort of occurrence, the court will grant the Non-

2001 U.S. Dist. LEXIS 22827, *

Parties' request to seal the videotapes of the deposition testimony. Videotapes are subject to a higher degree of potential abuse than transcripts. They can be cut and spliced and used as "sound-bites" on the evening news or sports shows. The potential embarrassment the Non-Parties would suffer at seeing their deposition performances displayed repeatedly during media accounts of Knight constitutes good cause and requires this court to grant the Non-Parties' motion for a protective order for the videotapes. This does not prevent Felling from disseminating the same or similar information that he receives from other sources. In fact, because the protective order with respect to the transcripts of the depositions is being lifted, the information is already available to the public, just not in the form Felling and WTHR would prefer. The practice of sealing videotapes of depositions has been approved of in several high-profile cases where the written depositions have been released [*10] to the public. *See United States v. McDougal, 103 F.3d 651, 658 (8th Cir. 1996)*; *Jones v. Clinton, 12 F. Supp. 2d 931, 935 & n.6 (E.D. Ark. 1998)*. In this way, the public (and WTHR) has access to the information, and a full opportunity to seek video interviews of the deponents, or to otherwise film the deponents in their very public roles of coaching, so that WTHR will have all of the visual images it might want if it finds anything worthy of broadcasting in the depositions.

In sum, the Non-Parties have not shown that good cause exists to prevent the dissemination of the Davis and Treloar depositions. The Non-Parties have not demonstrated that there is a clearly defined and serious injury to them from the dissemination of the deposition transcripts, which contain information that is largely available elsewhere. However, this court finds that the potential for abuse of the videotapes of the depositions is high and they should be covered by a continued protective order.

### III. Conclusion

For the foregoing reasons, the Non-Parties' Motion for a Protective Order is **DENIED** as to the contents of the depositions. However, it is **ORDERED** [*11] that the videotapes of the depositions are to remain under the protective order, and to that limited extent, the motion for a protective order is **GRANTED**. With respect to all of the motions, briefs, memoranda, and exhibits previously filed under seal in connection with this issue, the need for sealing no longer exists. Therefore, ten days after the issuance of this entry, the Clerk of the Court is **ORDERED** to unseal those filings.

ALL OF WHICH IS ORDERED this 21st day of December 2001.

John Daniel Tinder, Judge

United States District Court