# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RONALD T. WHITAKER, SR., et al. | : | NO. 1:08-CV-627 |
| Plaintiffs, | : | (Judge Christopher C. Conner) |
| | : | |
| v. | : | (Magistrate Judge Martin Carlson) |
| | : | |
| SPRINGETTSBURY TOWNSHIP, et al., | : | |
| Defendants. | : | Filed Electronically |

## BRIEF IN OPPOSITION TO AMY GULLI'S/
## THE YORK DAILY RECORD'S MOTION FOR ACCESS

For the reasons set forth in Defendants' Brief in Support of Defendants'

Unopposed Motion to Place Videotaped Evidence under Seal (Doc. Nos. 79, 82)

(attached hereto as Exhibit A), Defendants respectfully request that the Court deny

the Motion of Amy Gulli/the York Daily Record for Access and issue an Order

placing the Springettsbury Township surveillance video and the video of portions

of the discovery deposition of Defendant Gary Utter under seal.

Respectfully submitted,

/s/ Brian P. Gabriel
Brian P. Gabriel
Campbell Durrant Beatty
   Palombo & Miller, P.C.
555 Grant Street, Suite 310
Pittsburgh, PA  15219
(412) 395-1267
*Attorneys for*
*Springettsbury Township Defendants*

/s/ David J. MacMain
David J. MacMain (I.D. #59320)
Janelle E. Fulton (I.D. #80027)
LAMB MCERLANE PC
24 East Market Street, Box 565
West Chester, PA  19381-0565
(610) 701-3263
*Attorneys for Defendant Gary Utter*

Dated: January 4, 2010

## <u>CERTIFICATE OF SERVICE</u>

I, David J. MacMain, hereby certify that on this 4th day of January 2010, I

caused a true and correct copy of the foregoing Brief in Opposition to the Motion of

Amy Gulli/the York Daily Record for Access to be served upon the following via

the ECF system of the United States District Court for the Middle District of

Pennsylvania:

>Matthew B. Weisberg, Esquire
>Prochniak & Weisberg P.C.
>7 South Morton Avenue
>Morton, PA  19070
>mweisberg@ppwlaw.com
>*Counsel for Plaintiffs*
>
>Ms. Amy Gulli
>York Daily Record
>1891 Loucks Road
>York, PA 17408
>agulli@ydr.com

This *Certificate of Service* and the said filing are intended to be available for

viewing and downloading from the ECF system of the United States District Court

for the Middle District of Pennsylvania.

>/s/ David J. MacMain
>David J. MacMain

# EXHIBIT A

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

RONALD T. WHITAKER, SR., et al.  :  NO. 1:08-CV-627
           :
    Plaintiffs,    :  (Judge Christopher C. Conner)
           :
    v.      :  (Magistrate Judge Martin Carlson)
           :
SPRINGETTSBURY TOWNSHIP, et al., :
           :
    Defendants.   :  Filed Electronically

### BRIEF IN SUPPORT OF DEFENDANTS' UNOPPOSED
### MOTION TO PLACE VIDEOTAPED EVIDENCE UNDER SEAL

Defendants respectfully submit this Brief in Support of their Unopposed

Motion to Place Videotaped Evidence under Seal (Doc. No. 79).

## I. RELEVANT PROCEDURAL HISTORY AND FACTUAL BACKGROUND

On April 8, 2008, Plaintiffs Ronald T. Whitaker, Sr. and Dalea Lynn, filed a

federal civil rights action under 42 U.S.C. § 1983 against Defendants based upon the

July 7, 2007 officer-involved shooting of Ronald Whitaker, Jr. ("Whitaker"), in

which Defendant Springettsbury Township Police Officer Gary Utter was forced to

use deadly force against Whitaker after Whitaker violently attacked Officer Utter

and disarmed him of his expandable baton at the Springettsbury Township Police

Department ("SPD").  *See* Compl. (Doc. No. 1).

The underlying incident at SPD, and including the death of Whitaker, was

captured on surveillance video ("the SPD video"), which Defendants produced

during discovery.  On June 23, 2009, Plaintiffs' former counsel filed a Motion for Leave to Withdraw as Counsel (Doc. Nos. 43, 44), indicating that the evidence obtained during discovery, including the SPD video, did not support Plaintiffs' claims against Defendants.  On September 3, 2009, Defendants filed Motions for Summary Judgment with Supporting Briefs.  *See* Doc. Nos. 49-53.  On November 12, 2009, Plaintiffs filed a Brief in Opposition to Defendants' Motions for Summary Judgment, to which Plaintiffs attached a copy of the SPD surveillance video as Exhibit A.  *See* Doc. No. 68.

On November 16, 2009, the Court ordered Defendants to make a copy of the SPD video available to the Court.  *See* Doc. No. 69.  On November 25, 2009, Defendants filed a Reply to Plaintiffs' Brief in Opposition and attached a compact disc containing the SPD video, which was marked as Exhibit 1.  *See* Doc. No. 70. Defendants also attached as Exhibit 7 to Defendants' Reply Brief (Doc. No. 70) a portion of the video of Officer Utter's discovery deposition, which depicts the SPD video and Utter's very brief explanation of the events depicted on the SPD video.

On December 4, 2009, a member of the news media requested a copy of the compact disc containing both the SPD video and the portion of the videotaped discovery deposition of Defendant Gary Utter.  *See* Doc. No. 77.  On December 6, 2009, the York Daily Record, a newspaper with readership throughout the Middle District of Pennsylvania and available worldwide on the internet, published an

article titled "Video at Center of Wrongful Death Suit Involving Wrighstville Man, Springettsbury Police." (*See* Rick Lee, *Video at Center of Wrongful Death Suit Involving Wrighstville Man, Springettsbury Police*[1], York Daily Record, Dec. 6, 2009, attached hereto as Exhibit 1.) The article (http://ydr.inyork.com/ci_13935493?source=most_viewed) was placed online at 8:33 a.m. on December 6 and was quickly listed as the "most viewed" article on the newspaper's website, and had received nearly 50 comments – many of them very critical and hurtful to both the Whitaker family and Utter – in the first 3½ hours it was posted on the website. As of the date of filing, 124 comments have been posted on-line. *See* http://www.topix.net/forum/source/york-daily-record/T1RK7ICSBGPAF81DT (comments to online York Daily Record article).

In addition, the newspaper created an on-line "Reading Room," (*see* http://ydr.inyork.com/ydr/records/ci_13022033), in which it provided links for the public to view Plaintiffs' Opposition to Defendants' Motions for Summary Judgment, Defendants' Reply to Plaintiffs' Opposition, the Pennsylvania State Police Investigation Report, the Springettsbury Police Department Supplemental Report, and Defendants' Unopposed Motion to Seal.

---

[1] When viewed online, the article also contains the video stills from the SPD video that were attached to Defendants' Reply Brief (Doc. No. 79 at Exhibits 8, 9, 11). However, Defendants were unable to print the portion of the online article showing the video stills. Nevertheless, as long as the link is active, the Court can view the online article at http://ydr.inyork.com/ci_13935493?source=most_viewed.

Defendants respectfully request that the Court deny the media's (and any other non-party) request for the videos and that the Court further issue an Order placing both the SPD video and the portion of Utter's videotape deposition, which depicts the SPD video, under seal and precluding the parties from producing copies of the videos to the media or the public.

## II.    STATEMENT OF ISSUES

A.    Whether the production of the SPD video and the video of Utter's discovery deposition to the media or the public would taint the jury venire and negatively impact Defendants' right to a fair trial  and would constitute "good cause" for a protective order?

Suggested Answer:        Yes

B.    Should the SPD video and the video of Utter's discovery deposition be sealed and the parties be prevented from producing copies to the media or the public due to the traumatic effect of the sensitive nature of the videos?

Suggested Answer:        Yes

## III.    ARGUMENT

While "courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents . . . the right to inspect and copy judicial records is not absolute [, and] . . . [e]very court has supervisory power over its own records and files." *Nixon v. Warner*

4

*Communications*, 435 U.S. 589, 598 (U.S. 1978).  "[T]the decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case."  *Id.* at 599.

Federal Rule of Civil Procedure 26(c) provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c).  The Court of Appeals for the Third Circuit has provided a definition of the "good cause" required for a protective order, stating that it "is established when it is specifically demonstrated that disclosure will cause a clearly defined and serious injury.  Broad allegations of harm, unsubstantiated by specific examples . . . will not suffice."  *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995) (citing *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994)).  The "party seeking protection has the burden of showing that there is good cause for it."  *Shingara v. Skiles*, 420 F.3d 301, 306 (3d Cir. 2005).

The Third Circuit Court of Appeals has established a list of factors Courts should consider in determining whether a protective order is appropriate:

> (1) the interest in privacy of the party seeking protection;
> (2) whether the information is being sought for a legitimate purpose or an improper purpose;
> (3) the prevention of embarrassment, and whether the embarrassment would be particularly serious;
> (4) whether the information sought is important to public health and safety;

(5) whether sharing the information among litigations would promote fairness and efficiency;

(6) whether the party benefitting from the order of confidentiality is a public entity or official; and

(7) whether the case involves issues important to the public.

*Arnold v. Pennsylvania*, 477 F.3d 105, 108 (3d Cir. 2007) (citing *Pansy*, 23 F.3d at 787-88).

In this case, Defendants have identified the specific nature of the harm they will suffer if the videos at issue are released to the media or the public, namely, showing the silent video, which was recorded at only 3 frames per second, out of context and without explanation, will mislead the public – and the pool from which the jury will be selected – causing significant prejudice to Defendants and tainting the venire, which will have a negative effect on Defendants' ability to have a fair trial. Additionally, the release of the video to the media will cause Utter – and likely Whitaker's family – to suffer ridicule, "annoyance, embarrassment, [and] oppression." Fed. R. Civ. P. 29(c).

## A. Defendants Would Be Severely Prejudiced by the Release of the Videos Prior to Trial

Defendants have demonstrated good cause for the issuance of a protective order placing the SPD video and Utter videotape deposition under seal. Namely, the (1) ridicule, "annoyance, embarrassment, [and] oppression" (Fed. R. Civ. P. 29(c)), and (2) tainting of the jury pool, which will occur if these two items are not

placed under seal.

Courts have recognized that "[v]ideotapes are subject to a higher degree of potential abuse than transcripts. They can be cut and spliced and used as 'sound-bites' on the evening news or sports shows." *Felling v. Knight*, No. IP 01-0571-C-T/K, 2001 U.S. Dist. LEXIS 22827, *1, *9 (S.D. Ind. Dec. 21, 2001) (attached as Exhibit A to Defendants' Motion (Doc. No. 79)).

In this case, not only are the videos subject to editing, but the SPD video itself is severely limited and, without Utter's explanation of the events to put the video in context, the video may be misleading. As such, if the media or some other non-party shows the videos to the jury venire prior to trial, the jury pool will be tainted, and Defendants will be deprived of their right to a fair trial.

First, publication of the videos will negatively impact Defendants' right to a fair trial, because the SPD video is incomplete – namely, due to the fact that the SPD video 1) is silent (i.e., does not have sound) and 2) was recorded at only 3 or 4 frames per second, as opposed to 30 frames per second, at which the average home-use video camcorder records, and thus the video from the incident appears choppy, rather than fluid, and only a fraction of the action was recorded. As such, the video could be misleading if viewed out of context and without Utter's explanation of the events as they unfolded. Thus, Defendants would be prejudiced by its dissemination. *See Felling*, 2001 U.S. Dist. LEXIS 22827 at *9.

Indeed, on December 6, 2009, the York Daily Record published an article titled *Video at Center of Wrongful Death Suit Involving Wrighstville Man, Springettsbury Police*.  (*See* Rick Lee, *Video at Center of Wrongful Death Suit Involving Wrighstville Man, Springettsbury Police*, York Daily Record, Dec. 6, 2009, attached hereto as Exhibit 1; http://ydr.inyork.com/ci_13935493?source=most_viewed.)  The article was placed online at 8:33 a.m. on December 6 and was quickly listed as the "most viewed" article on the newspaper's website, and had received nearly 50 comments – many of them very critical and hurtful to both the Whitaker family and Utter – in the first 3½ hours it was posted on the website.  http://www.topix.net/forum/source/york-daily-record/T1RK7ICSBGPAF81DT (comments to online York Daily Record article).

In addition, the newspaper created an on-line "Reading Room," (*see* http://ydr.inyork.com/ydr/records/ci_13022033), in which it provided links for the public to view Plaintiffs' Opposition to Defendants' Motions for Summary Judgment, Defendants' Reply to Plaintiffs' Opposition, the Pennsylvania State Police Investigation Report, the Springettsbury Police Department Supplemental Report, and Defendants' Unopposed Motion to Seal.  Thus, there is no question that, unless the Court issues a protective order and places the videos under seal, the videos themselves will be posted on the internet and broadcast throughout the Middle District of Pennsylvania on the 6 o'clock news.  *See* http://www.topix.net/forum/source/york-daily-record/T1RK7ICSBGPAF81DT

(comments to online York Daily Record article).

Second, as can be seen from the comments to the York Daily Record article[2], publication of the silent, stop-frame SPD video – out of context and without Utter's narration, is misleading and undoubtedly will taint the jury pool and severely prejudice the Defendants.

In *United States v. Weed*, 184 F. Supp. 2d 1166 (N.D. Okla. 2002), the Court addressed a factually similar issue and ruled that the video at issue should be placed under seal until trial to avoid tainting the potential jury pool:

> Given the nature of the crime alleged in this case, the media interest in this case has been significant . . . .  Numerous newspaper articles and television stories have been broadcast . . ., from which any potential *venire* will be drawn.  It is, therefore, likely that the contents of the tape, or at least a summary of its contents would be widely reported in this community.  The government's ability to obtain a fair trial would be compromised because the community of potential jurors would have been exposed to only one piece of the otherwise complex puzzle . . . .  The Court finds that avoiding the prejudice caused by such a one-sided doling out of evidence prior to trial provides a substantial reason for sealing the videotape prior to trial.  The Court finds that sealing the videotape until trial is essential to preserve the government's right to a fair trial.

*Id.* at 1176-77.

The same reasoning applies here, and Defendants therefore respectfully request that the Court issue an Order placing the videos under seal and precluding

---

[2] Although to date only print media has requested copies of the videos, Defendants anticipate that, given the sensational aspect of the videos, television media outlets will also likely seek copies of the videos, which would in all likelihood be shown on television and the internet throughout the Middle District and beyond.

the parties from making available or providing copies of the videos to the media or

the public, at least until the trial is over and this matter is concluded.

Moreover, contrary to the prejudice faced by Defendants by the release of

the videos, neither the media, nor the public will be prejudiced by sealing the

videos, given that significant information regarding the incident, including the

investigation reports of the Pennsylvania State Police and the text of deposition

transcripts, has been made publically available.  Additionally, the Court has the

option of placing the videos under seal for a limited amount of time, namely until

this litigation (including any appeal) is fully and finally concluded.

Accordingly, the analysis of the *Pansy* factors weighs heavily in favor of the

issuance of a protective order and the sealing of the videos, at least until the case

has been concluded.

**B.**   **Publication of the SPD Video Would Be Emotionally Harmful to Defendant Gary Utter**

The content of the SPD video (and the Utter deposition video, which depicts

the SPD video) is highly sensitive in nature in that it depicts the death of Whitaker,

which was an extremely traumatic event for Utter and for Whitaker's family.  *See*

Fed. R. Civ. P. 26(c); *Felling*, 2001 U.S. Dist. LEXIS 22827 at *9 (ruling that the

potential embarrassment that would result from publication of the deposition

videos warranted protection).  As can be seen from the numerous comments posted

to the York Daily Record article (http://www.topix.net/forum/source/york-daily-

record/T1RK7ICSBGPAF81DT), publication of the videos, the subject of which is traumatic for both Plaintiffs and Defendant Utter, would also subject both Plaintiffs and Defendants to ridicule, "annoyance, embarrassment, [and] oppression." Fed. R. Civ. P. 29(c). As such, Defendants urge the Court to enter a protective order and seal the SPD and Utter videos.

## IV.   **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court issue an Order placing the Springettsbury Township surveillance video and the video of portions of the discovery deposition of Defendant Gary Utter under seal and precluding Plaintiffs from producing the videos to the media or the public.

Respectfully submitted,

/s/ Brian P. Gabriel
Brian P. Gabriel
Campbell Durrant Beatty
   Palombo & Miller, P.C.
555 Grant Street, Suite 310
Pittsburgh, PA  15219
(412) 395-1267
*Attorneys for Defendants*
*Springettsbury Township,*
*Springettsbury Township Police Dep't,*
*and Chief of Police David Eshbach*

/s/ David J. MacMain
David J. MacMain (I.D. #59320)
Janelle E. Fulton (I.D. #80027)
LAMB MCERLANE PC
24 East Market Street, Box 565
West Chester, PA  19381-0565
(610) 701-3263
*Attorneys for Defendant Gary Utter*

Dated: December 21, 2009

## **CERTIFICATE OF SERVICE**

I, David J. MacMain, hereby certify that on this 21st day of December 2009, I caused a true and correct copy of the foregoing Brief in Support of Defendants' Unopposed Motion to Place Videotaped Evidence under Seal to be served upon the following via the ECF system of the United States District Court for the Middle District of Pennsylvania:

> Matthew B. Weisberg, Esquire
> Prochniak & Weisberg P.C.
> 7 South Morton Avenue
> Morton, PA  19070
> mweisberg@ppwlaw.com
> *Counsel for Plaintiffs*
>
> Ms. Amy Gulli
> York Daily Record
> 1891 Loucks Road
> York, PA 17408
> agulli@ydr.com

This *Certificate of Service* and the said filing are intended to be available for viewing and downloading from the ECF system of the United States District Court for the Middle District of Pennsylvania.

> /s/ David J. MacMain
> David J. MacMain

# EXHIBIT 1



# Video at center of wrongful death suit involving Wrightsville man, Springettsbury police

By RICK LEE
Daily Record/Sunday News

Updated: 12/06/2009 08:33:51 AM EST



Ronald T. Whitaker Jr. (Submitted)

A decorated police officer, Patrolman Gary D.S. Utter took a bleeding Ronald T. Whitaker Jr. into custody the night of July 7, 2007, because Utter was the only one among five officers at a crime scene who had gloves handy.

Less than an hour later, Utter shot and killed Whitaker inside the Springettsbury Township Police station.

Now, both sides in a civil wrongful death lawsuit say a video of the shooting is all the judge needs to dismiss the suit or send it to trial.

An attempt to obtain a copy of the video Friday was rejected by the court. But exhibits filed within the past two weeks -- including interviews with Utter, and still photographs from the security video -- provide details about what happened that night.

---

The lawsuit "is absolutely without any merit, factually or legally," Utter's attorney David J. MacMain said Friday. "And that is an opinion shared by Mr. (Ronald) Whitaker (Sr.'s) prior attorneys, the Pennsylvania State Police who conducted the investigation and the York County District Attorney."

In October 2007, district attorney Stan Rebert ruled the shooting justified. The family sued six months later. In September 2009, Utter and Springettsbury police asked the judge to dismiss the suit. Three weeks ago, Magistrate Judge Martin C. Carlson ordered that the video be made available to him.

Matthew Weisberg, the attorney representing Whitaker's family, said Friday that Whitaker's shooting was unwarranted. He said that Whitaker, after struggling with Utter, was shot twice in the back as he was retreating. He contended that the second shot came four seconds after the first and that it was the use of excessive deadly force. In a court filing, Weisberg says that second shot came when Whitaker was on the ground.

Advertisement



Print Powered By FormatDynamics™



The defendants say in a court filing that the video does not have sound, and captures 3-4 frames per second, so it's choppy.

But MacMain said it shows Utter had every right



Former Springettsbury Police Officer Gary Utter. (Submitted)

to shoot Whitaker to protect his own life and prevent Whitaker from taking his sidearm.

Weisberg said it shows Utter shooting Whitaker in the back after the man was no longer a threat to the officer.

---

Whitaker had spent the day with his family. They were living in the basement of their fire-damaged home in Wrightsville, the only habitable part of the house. Whitaker was working on a demolition derby car, trying to have it ready for the following weekend.

He had a few drinks but was not intoxicated, his longtime companion, Dalea Lynn, said. She also told investigators she did not believe Whitaker had taken any illegal drugs. The autopsy found evidence of cocaine, alcohol and marijuana in Whitaker's system.

That evening, Whitaker collected $20 in change



The family of Ronald Whitaker Jr. -- including his mother, Shirley, and his father, Ronald Sr., shown here -- believes former Springettsbury Police Officer Gary Utter should be held liable in civil court for Whitaker Jr.'s shooting death. (Daily Record/Sunday News -- File)

from his home and went to Giant to exchange it in a Coinstar machine for bills.

Whitaker complained to an employee that the machine shorted him more than $17, and he needed the money for gas to get home.

Unhappy when told he could only get his money

Advertisement



Print Powered By **Format**Dynamics™



through Coinstar, Whitaker shouted, "Give me my money, bitch," and pushed a cash register off the counter.

---

Utter said that Whitaker "was calm. Relaxed. Mellow. Just as laid back as can be," when they arrived at the station.

"He never said anything. He never said a word to me. He went into the room," Utter later told investigators.

When Whitaker complained of difficulty breathing and was holding his side, Utter called for an ambulance to respond to the otherwise empty police station.

While filling out paperwork, Utter could see on the holding cell surveillance camera that Whitaker was lying on the floor near the door. When Utter pushed his way into the room, he heard "gurgling" sounds, and he saw Whitaker had tied "a string" around his neck and the doorknob.

"I tried getting it off his neck," Utter said in his July transcribed statement to state police. "And as I did that, then Mr. Whitaker came to life and then he was just berserk. He just started screaming. Started throwing punches. Tried to pull me down. I got away from him.

"He never spoke any English. No words. It was just somebody that was like berserk. Just crazed.

I mean just 'aahh,' just nothing -- no 'I'm going



(Daily Record/Sunday News -- Carrie Hamilton)

to ------ kill you,' 'you're dead.' You know nothing. I mean no words. It was just screaming like a caged animal."

Utter said he Tasered Whitaker, and the man dropped to the floor. The officer tried to pull the string from around the man's throat. He said he worked it up Whitaker's face and was "almost ready to slip it off and all of a sudden he came to again."

Whitaker renewed his attack on Utter. Utter pushed the Taser button again.

Advertisement





Print Powered By [FormatDynamics]



"I remember as I was backing up as he was charging me. I remember hitting the Taser again and thinking to myself, 'My God, he's just walking right through it,' you know?" Utter told investigators.

"I, myself, was hit with a Taser and I remember laying on the floor screaming. That's all you could do is friggin' scream because there's no words to describe what it feels like and I was thinking, 'It's got to be working because he's screaming.' He's screaming but he is coming straight at me. He's still coming at me."

Utter said Whitaker pulled at his utility belt where he carried his gun, pepper spray and collapsible baton. He said he was afraid one of Whitaker's "hail makers" would knock him out, and Whitaker could get his gun.

"... one of those punches he keeps throwing is going to be a lucky punch, you know," Utter said. "I'm going to go down, and I can't go down.

"I remember walking through like if I was out on the (firing) range. Just pulling the snap out, pulling it up, bringing it tight to my body and, at which point, he was to my left.

"I was in the corner and he was on my left. And I remember having my arm up and just bringing it up and pointing it in his general direction and pulling the trigger for the first shot."

Utter said he remembered Whitaker "peeling

away" but did not know if the bullet struck him.

"I remember pulling the weapon up again and firing the second shot," Utter said. "Aiming towards his back and then basically he went down, laid on the ground."

The ambulance dispatched for Whitaker's breathing difficulty arrived shortly after the shooting. Officers who had returned to the s tation for the "Signal 13," Utter's distress call, helped load the man in the ambulance. Whitaker was pronounced dead at York Hospital.

---

In their objection to Utter's request for summary judgment -- dismissal of the lawsuit -- Whitaker's family attorney argued the court needs only to view the videotape of the shooting, "which is truly the only pertinent evidence for summary judgment purposes," to reject that motion.

The defendants also urged the court to view the video. In their response to the plaintiff's objection, the defense attorneys said they had "no idea what the factual basis" of the family's claim is, "but it is certainly not based upon the physical evidence or a viewing of the video."

In June, the Whitaker family's first attorneys successfully petitioned to withdraw from the case. In their written request, the attorneys told the court, "Counsel seeks withdrawal because, having substantially completed discovery in this

Advertisement



Print Powered By [FormatDynamics]



case, (we) do not believe that the facts support the claims (pleaded) in the complaint and thus cannot in good faith continue to prosecute the action."

In its lawsuit, in which it seeks more than $75,000 in damages, Whitaker's family claims:

--- Utter entered the holding cell "for an unknown reason";

--- Whitaker "did not endanger the life of" Utter;

--- Whitaker was fleeing from ... Utter's grasp;

--- Whitaker's "back was towards ... Utter when . .. Utter suddenly and unnecessarily used his firearm to shoot (Whitaker) in the back."

Whitaker's longtime partner, Lynn, said Friday she didn't want to comment on the lawsuit.

Weisberg said Friday he agreed to take the case because "we believe the video presents compelling evidence that the two shots were both in the back as Mr. Whitaker was running away."

On Friday, the court granted the defense's request that it table all trial and pretrial motions until it has ruled on the motion to dismiss.

Cited for valor in 2006 for carrying a woman out of a burning apartment, Utter was fired after being charged with driving under the influence

while on duty in 2008. His attorney said his drinking problem began after he shot Whitaker. Utter's DUI case is now on appeal in an attempt to be placed on Accelerated Rehabilitative Disposition, a program for first-time, nonviolent offenders that would keep him out of jail.

**SOURCES**

This story was reported using the following documents on file in U.S. Middle District Court in Harrisburg:

---Complaint of Ronald T. Whitaker Sr., et al., co-administrator of the estate of Ronald Whitaker Jr. v. Springettsbury Township, Springettsbury Township Police Department, Chief of Police David Eshbach and Police Officer Gary D.S. Utter, April 8, 2008;

---Investigation reports of Pennsylvania State Trooper Bryan R. Henneman, July 18, 19, 23 and 27, 2007;

---Forensic Pathology Associates Inc. autopsy report, July 9, 2007;

---Transcript of Pennsylvania State Police interview of Gary D.S. Utter, July 16, 2007;

---Brief in support of motion to withdraw as plaintiff's counsel, June 23, 2009;

---Defendant Gary Utter's motion for summary judgment, Sept. 3, 2009;

Advertisement



Print Powered By [Format**Dynamics**]™



--- Plaintiff's opposition to motion for summary judgment, Nov. 12, 2009.

**COURT WITHHOLDS VIDEO**

The York Daily Record/Sunday News formally requested access to a compact disc submitted as evidence in the federal wrongful death lawsuit against former Springettsbury Police Officer Gary D.S. Utter on Friday in U.S. Middle District Court in Harrisburg.

That request was rejected after the court contacted the parties and there were objections to its release. The defendants then filed a motion Friday asking the judge to seal the video, and noted that the Whitaker family's lawyer would not oppose the motion.

Court documents indicate the CD contains police department surveillance video of the struggle between Utter and Ronald Whitaker Jr.; Whitaker's fatal shooting by Utter; and part of Utter's deposition.

**DOCUMENTS ONLINE**

Go to the "Reading Room" of the Daily Record/Sunday News' open records section to see these court documents in the Ronald Whitaker Jr. wrongful death lawsuit:

---State police investigative report

---Springettsbury Police Department supplemental report

---Plaintiffs' reply to defendants motion for summary judgment

---Defendants' reply to plaintiffs' opposition to motion for summary judgment

---Motion to seal video of incident

There are more documents available online. For a guide on how to look up federal court records online, see this Record Tracker blog post.

Advertisement



Print Powered By  [Format**Dynamics**]™