## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RONALD T. WHITAKER, SR., et al.** | : | **Civil No. 1:08-CV-627** |
| | : | |
| **Plaintiffs,** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **SPRINGETTSBURY TOWNSHIP, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

### MEMORANDUM OPINION AND ORDER

### I.     Statement of Facts and of the Case.

This is a civil rights action brought by Ronald T. Whitaker, Sr. and Dalea Lynn, arising out of the July 7, 2007 fatal shooting of Ronald T. Whitaker, Jr., at the Springettsbury Township Police Department. As detailed in the report and recommendation filed by the Court, that shooting occurred in the course of a violent assault by Whitaker on a Springettsbury Township Police Officer. The background of this tragic incident is thoroughly detailed in the report and recommendation filed by this court, a report and recommendation which recommends that the District Court find that the defendants are entitled to summary judgment in this case.  That report and recommendation notes, in part, that this assault, and Whitaker's death, were captured on a police video tape which is part of the discovery material in this case.

In this separate opinion and order we are addressing competing motions

relating to this video tape, which is part of the discovery material amassed in this case. These motions include a *pro se* motion filed by a member of the news media seeking access to this video (Doc. 77), as well as a motion for protective order filed by the defendants, which requests that the video remain under seal at present. (Doc. 79).These motions have been fully briefed (Docs. 82 and 84) and are now ripe for resolution.

For the reasons set forth below, at this time we will grant the defendants' motion for protective order (Doc. 79), and deny the motion for access to this video tape.

## II.    Discussion

The competing motions filed in this case call upon the Court to strike the appropriate balance between three separate interests: First, we must consider the understandable and compelling privacy interests of the parties, who found themselves tied by twists of fate to a fatal shooting, and whose privacy rights could be profoundly affected by the dissemination of the video depicting this incident. Second, we must assess the interests of the litigants, the courts and the public in a fair trial, should there be a trial in this case, a trial which is unaffected by the powerfully prejudicial impact might result from premature dissemination of a this video. Finally, we must weigh the media and public interest in the release of this information in a case of

some public interest.

These competing motions also call upon the Court to exercise its authority under Rule 26 of the Federal Rules of Civil Procedure to regulate discovery in this case. Issues relating to the scope of discovery permitted under the Rules rest in the sound discretion of the Court. Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 90 (3d Cir. 1987). A court's decisions regarding the conduct of discovery will be disturbed only upon a showing of an abuse of discretion. Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983).

That discretion is guided, however, by certain basic principles. Thus, under Rule 26, this Court has the authority to enter orders limiting discovery, including orders which limit non-party access to discovery materials in pending cases. See Rule 26(c)(1)(A)-(H), F. R. Civ. P. Non-parties, like media representatives, who seek to gain access to discovery materials in a pending civil lawsuit must, in turn, file a motion to intervene under Rule 24 of the Federal Rules of Civil Procedure, and comply with the requirements of that Rule before their requests should be entertained. See, Littlejohn v. BIC Corporation, 851 F.2d 673, 675 (3d. Cir. 1988), see also, Moore's Federal Practice 3d, § 26.102[2], n.7(2009 ed.)(collecting cases).

Furthermore, any third party request for access to this type of material must also meet the substantive legal standards which govern this type of third-party access

to discovery materials. Those substantive standards begin with the familiar proposition that, while "courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents . . . the right to inspect and copy judicial records is not absolute [, and] . . . [e]very court has supervisory power over its own records and files." Nixon v. Warner Communications, 435 U.S. 589, 598 (U.S. 1978). Recognizing the Court's broad supervisory power in this field, it has been held that "the decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." Id. at 599. Moreover, when exercising this discretion, we are guided by the considerations cited in Federal Rule of Civil Procedure 26(c) which provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c).

"Good cause" justifying restricting third party media access to discovery materials "is established when it is specifically demonstrated that disclosure will cause a clearly defined and serious injury. Broad allegations of harm, unsubstantiated by specific examples . . . will not suffice." Glenmede Trust Co. v. Thompson, 56 F.3d 476, 483 (3d Cir. 1995)(citing Pansy v. Borough of Stroudsburg, 23 F.3d 772, 786 (3d Cir. 1994)). Instead, the United States Court of Appeals for the Third Circuit has

4

established a list of factors courts should consider in exercising this discretion and

determining whether a release of specific materials is appropriate:

> (1) the interest in privacy of the party seeking protection;
> (2) whether the information is being sought for a legitimate purpose or
> an improper purpose;
> (3) the prevention of embarrassment, and whether the embarrassment
> would be particularly serious;
> (4) whether the information sought is important to public health and
> safety;
> (5) whether sharing the information among litigations would promote
> fairness and efficiency;
> (6) whether the party benefitting from the order of confidentiality is a
> public entity or official; and
> (7) whether the case involves issues important to the public.

Arnold v. Pennsylvania, 477 F.3d 105, 108 (3d Cir. 2007) (citing Pansy, 23 F.3d at

787-88).

Moreover, in considering the release of video taped  discovery materials to

third parties, this Court must also be sensitive to ensuring the protection of two

important interests: Individual privacy interests and the rights of all litigants to a fair

trial by an impartial jury. These concerns apply with particular force to the third-party

dissemination of videotapes. Courts have long recognized that "[v]ideotapes are

subject to a higher degree of potential abuse than transcripts. They can be cut and

spliced and used as 'soundbites' on the evening news or sports shows." Felling v.

Knight, No. IP 01-0571-CT K, 2001 WL 1782360, *3 (S.D. Ind. Dec. 21, 2001).

Further dissemination or distribution of edited tapes can also prejudice the right to a fair trial, and result in annoyance, embarrassment, oppression, or undue burden or expense for parties, factors which have led some courts in the past to deny such requests. See Felling, at *3; United States v. Weed, 184 F. Supp. 2d 1166, 1176-77 (N.D. Okla. 2002).

Recognizing this fundamental truth, that broad distribution of video taped discovery materials can be particularly invasive of personal privacy, and may be subject to editing and manipulation in ways which are highly prejudicial,[1] courts have repeatedly exercised their discretion by entering protective orders limiting disclosure of such video taped discovery material in the pre-trial stages of litigation. See e.g., United States v. MacDougal, 103 F.3d 651 (8th Cir. 1996)(refusing to release video);

Stern v. Cosby, 529 F.Supp.2d. 4197 (S.D.N.Y. 2007)(same); In re NBC Universal, 426 F.Supp.2d 49 (E.D.N.Y. 2006)(same); Hobley v. Burge, 225 F.R.D. 221 (N.D. Ill. 2004)(same); Felling v. Knight, No. IP 01-0571-CT K, 2001 WL 1782360, *3 (S.D. Ind. Dec. 21, 2001)(same); Jones v. Clinton, 12 F.Supp.2d 931

---

[1]In noting this concern, we wish to emphasize that we do not believe that the *pro se* media movant would engage in any improper editing of the video. However, any dissemination of the video in a public forum places that video in the hands of countless persons, whose motivations and actions would be beyond the court's control. Thus, the concerns voiced here remain undiminished even accepting the good faith of the movant.

6

(E.D. Ark. 1998)(same). <u>But see</u> <u>Rodriguez v. City of Ft. Wayne</u>, 2009 WL 424244
(N.D. Ind. Feb. 18, 2009)(denying protective order).

In this case, as we exercise our discretion and weigh the factors prescribed by
law, we accept that the media request reflects that there is some degree of public
interest in this matter, and that the media is motivated by that public interest to seek
the video. However, we believe that disclosure of the video at this time would be
inappropriate for at least two reasons.

First, while we recognize in light of our report and recommendation that this
matter may be resolved without a trial, until the future course of this lawsuit is
determined we believe that it would be inappropriate to disseminate the video
broadly, since the release of that video could prejudice the ability of the parties to
secure an impartial jury. These concerns are heightened here, where the video may
be subject to editing by third parties once released, editing which could dramatically,
and inaccurately, shift perceptions of this episode in ways which would be highly
prejudicial to the trial rights of the litigants. In such a setting, the prudent course
would be to deny this request, at present, without prejudice to renewal of the request
following the conclusion of the proceedings when the risk of unfair prejudice would
be greatly diminished. <u>See</u> <u>In re NBC Universal</u>, 426 F.Supp.2d 49 (E.D.N.Y.
2006)(denying media request for access to videos until after trial has concluded).

More fundamentally, our decision is motivated by the legitimate, and we believe, compelling privacy concerns that inspired the defendants' motion for protective order. These privacy concerns are a critical consideration in cases of this type, and often form the basis for protective orders.  See e.g., United States v. MacDougal, 103 F.3d 651 (8th Cir. 1996)(refusing to release video); Stern v. Cosby, 529 F.Supp.2d. 4197 (S.D.N.Y. 2007)(same); Hobley v. Burge, 225 F.R.D. 221 (N.D. Ill. 2004)(same); Felling v. Knight, No. IP 01-0571-CT K, 2001 WL 1782360, *3 (S.D. Ind. Dec. 21, 2001)(same).

In our view there are few events that could be more deserving of privacy than the moment of a person's death. In this case, fate has tied Whitaker and the police officer he assaulted on July 7, 2007 together in a fatal moment, a tragic instance captured on video. Both men will always be linked together in this moment, a moment that ended the life of Whitaker, and forever changed the life of the police officer that he assaulted. Whitaker's death, and the officer's life, are both deserving of greater privacy and dignity than would be afforded through the broad release of this video. Both men deserve better than to have this moment, and their lives, reduced to some Internet posting. The order we enter today gives both men the privacy that they are entitled in receive.

**III.    <u>Conclusion</u>**

Accordingly, for the foregoing reasons, the *pro se* motion seeking access to this video (Doc. 77), is DENIED and the motion for protective order filed by the defendants, which requests that the video remain under seal at present (Doc. 79) is GRANTED.

So ordered this 19th day of April, 2010.



<u>**S/Martin C. Carlson**</u>
United States Magistrate Judge

9